The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Amy C. Lannard presiding. Good afternoon. The court is taking up. Case number 4, 2, 3, 0, 7, 1, 2 people in the state of Illinois versus Charles Davis and Ms. Olson, if you would please state your appearance for the record. Office of the State Appellate Defender on behalf of appellant Charles Davis. Thank you. And Mr. Lunderkin, if you would please state your appearance for the record as well. My name is Timothy J. Lunderkin. I'm an attorney with the appellate prosecutor's office on behalf of the state. Is it just my computer? Because Ms. Olson, I couldn't hear her very well at all. Very slight. Now, I can't hear her at all. That change anything? Yes, a little bit. Yeah. I think you're going to have to speak up. It is rather, or maybe sit closer to your microphone, perhaps. Is that any better? Thank you. Thank you. Ms. Olson, you may proceed with your argument. Thank you. May it please the court. Good afternoon. Your honors counsel again. My name is Abigail Olson from the office of the state appellate defender on behalf of appellant Charles Davis. Your honors following a jury trial, Mr. Davis was convicted of aggravated battery for allegedly choking his longtime girlfriend, Nakia Blaylock. The only evidence of this allegation came from Ms. Blaylock's recorded statements to the responding officer from his body worn camera video. The state failed to serve Ms. Blaylock with a subpoena for trial and instead filed a motion in limine seeking to admit her statements via the forfeiture by wrongdoing doctrine. I'm going to argue today that the trial court aired and granting that motion in limine. Primarily because the state did not show that it made that it met the 1st element of the doctrine that it made good faith efforts to secure Ms. Blaylock's presence at trial. However, if the court finds that the unavailability element was met, we do additionally argue that the state failed to show that Mr. Davis conduct is what caused Ms. Blaylock's unavailability. And for these reasons, we're arguing a new trial should occur. Before I turn to the merits of the case, I do want to address the procedural issue in the case and the state's argument that that Mr. Davis had forfeited his right to an appeal at all. So the parties after a jury trial and Mr. Davis was convicted, the parties entered into a sentencing agreement where they agreed that defense counsel would withdraw the motion for a new trial that he had filed. In exchange for the state recommending two years for Mr. Davis in the Illinois Department of Corrections and the court accepted that agreement. And they, you know, they didn't have the sentencing hearing. And so the state is attempting to argue that that sentencing agreement is the same as a guilty plea, essentially. And that Mr. Davis needed to have withdrawn his sentencing agreement in order to appeal his conviction and we disagree with that. Mr. Davis did not once admit any guilt to this conviction. He did not enter a guilty plea. And the sentencing agreement is not the same. At most, you know, we would say with withdrawing the motion for a new trial, you know, maybe he, you know, lost the right for those preserved issues that were raised in the motion for a new trial. But of course, there's under Rule 606A, oops, sorry, 615, you know, that allows for non-preserved issues to be reviewed as plain error. Which is what we do argue should happen in this case. And additionally, there are a lot of issues that don't need to be raised in a motion for a new trial, reasonable doubt, constitutional issues. And importantly, I do, I want to point out that after the sentencing agreement, the trial court recognized that Mr. Davis did have the right to appeal. He went, he admonished him of his rights and he said, the trial court said, you know, you have the right to appeal your conviction or your sentence. If you want to appeal the sentence, you do need to withdraw your sentencing agreement. And if you wish to appeal your conviction, all you have to do is file the notice of appeal within 30 days, which Mr. Davis did. So, so we do argue that he has a right to appeal and that the issues in this case should be reviewed as plain error and specifically because the evidence was so closely balanced in this case that without what I'm going to argue is an invisible hearsay evidence, a reasonable jury could not have convicted Mr. Davis of this crime. So, counsel, if I may interrupt with regards to that sentencing agreement, then, you know, the state has argued that to allow him to raise issues on appeal is to allow him to avoid his own commitment and not seeking a new trial, but to benefit from that sentencing agreement. And what I hear you saying, and I just want to make sure that I'm accurate, is that he still did sacrifice some of his rights by withdrawing that motion for a new trial and that there were some issues that he could not raise, but he could still, what he preserved for himself is simply the opportunity to pursue those under the plain error doctrine. Correct. Yes. And I will just add, you know, to the extent that the state tries to say, you know, he's getting a benefit without upholding his end of the bargain, Mr. Davis has served his two years in the EOC, and, you know, he's not challenging the sentence. He is, but he still has the right, you know, he's never once said that he was guilty for this conviction. But yes, you are correct. But counsel, under the terms of the agreement, he was getting two years concurrent to a federal sentence. He was going to be serving anyway, or was serving. So it's not like he got an additional two years on top of it. He just got the same sentence. Correct. Yes. So what is it that he's, you know, what's the detriment you're talking about to him serving the two years? He already had two years. He got 208 days credit for this one and a concurrent sentence. So what's the detriment to him? I think, I mean, he, to the extent that the state may be intended that this was supposed to be a forfeiture of his right to appeal. You know, I think that that didn't happen, right? Like, that's, that's not what he agreed to. And the state had plenty of opportunity to object if they didn't, you know, after the state had read the admonishments of, you still have, you have the right to appeal, you have the right to appeal your conviction, or you have the right to appeal your sentence. State never once said, wait, wait, wait, I'm not sure, you know, this is what we're agreeing to here. So, so yeah, I think, I mean, just, I think that what the agreement was is what Mr. Davis has upheld as to his sentence. But nothing. So you're not maintaining that he suffered some detriment? Not, no, not beyond what the agreement is. Yeah, so just a final point on that. You know, we do, we argue that, you know, the essential problem here is that Mr. Davis didn't have the chance to cross-examine Ms. Blalock as to those statements and explore any motive that she may have had here. And so without, you know, that, he didn't want to. What's that? He didn't want to. To cross-examine her? If he wanted to cross-examine Ms. Blalock, if he wanted to raise that as part of his motion, he withdrew it. And if he didn't raise it, then he didn't raise it. So it wasn't an issue. Because the motion was withdrawn, you mean? Right. I mean, if he didn't put it in the motion, then he obviously didn't want to raise it. And if he did put it in the motion and he withdrew his motion, he didn't want to raise it. He's getting a deal. So he just wants the deal. He doesn't care about all the rest of this stuff. This is something that's been created afterwards. His deal, his concern was, I get two years on top of my federal two years, I'm good. Get me out of here. I think that, yeah, absolutely. I mean, the fact that the motion was withdrawn, he didn't want to appeal. And the judge kind of expressed some confusion. And he said, yes, my client agrees to this, but he wants to appeal his conviction. So trial counsel knew that he did still want to appeal, that he never agreed to this conviction. He never pled guilty to the conviction. So. So Ms. Olson, if he forfeited the issues in the motion, that can be raised by plain error. But if he waived those, a waiver would not allow for a plain error analysis. Can you tell us what the distinction would be here? Did he waive it or did he just forfeit it? We it's our contention that he just forfeited the preserve. And why? There is nothing in the record that he signed any sort of agreement waiving his right to appeal. Nothing at all. The only thing we have is what trial counsel read, you know, read off to the court and what the state said. Yes, we agree. Those are the terms. And like I said, the court went on to then tell him you have the right to appeal. All you have to do is file your notice of appeal, which was filed that same day. So so the fact that the motion for new trial was was withdrawn was only getting rid of, you know, those potentially preserved issues. And there's still we agree there's still reviewable under plain error. He did not waive any issues. If there's no further questions about that issue, I will now turn to unavailability and the forfeiture for wrongdoing by wrongdoing doctrine. And so we argue that the state absolutely did not make did not show that it made good faith reasonable efforts in this case. As you know, the evidence for unavailability was the state made a proffer that their investigator wasn't available, couldn't testify, but that the investigator had indicated he was not able to locate Blaylock. She did not answer calls or cards that he left. That's all that was said. That's all we have. And then the state had two victim service providers testify as to some phone calls that to three phone calls that they'd had with Miss Blaylock. And I do want to point out, you know, right away, the court expressed concern that this witness wasn't actually unavailable. You know, the court said your proffer is weak. You could have and you should have been more detailed in your efforts. You're short on your efforts by significant margin. And then finally, you know, if it weren't for the fact that we have this lady on three different occasions saying I'm not coming, I'd say you fall short of even establishing by a preponderance of the evidence. And the trial court really did end up relying on those phone calls, which we argue, you know, that it wasn't enough to show unavailability. So at first, I do want to point out that when he says if we didn't have these three phone calls saying she's not coming, it is in fact only two phone calls where she said that. There were three calls, January, April and June. It was only the April and June phone calls that she said anything about not coming to court. So that is one less call than the trial court, you know, trial court misunderstood that part of it. And the victim service providers, you know, we don't have any information that they followed up. And one of the phone calls Miss Blaylock says I'm out of state. I'm living with my mother. They don't, you know, there's no indication that, you know, now we know maybe she's out of state, but there's no indication that there was any follow-up done to find her to figure out where that might be. And I think, you know, the final point is, you know, just because a witness says, hey, I don't want to come to trial. I'm not coming to trial. You know, witnesses are often reluctant to come to trial. And that's why we have the tools, a subpoena to get them to come to trial. And, you know, looking at the people of E. Chapman case, for example, the recent Illinois Supreme Court case, it's very on point. And I think it's very helpful to see why this case falls short on the unavailability element. In that case, the witness had been receiving threats, was hiding, essentially had disappeared. In that case, the detective testified at length at trial, asked the efforts to find that witness. He posted on iBoard. He examined all, you know, researched all potential past addresses for this witness, and then traveled out of state to Iowa, where he potentially thought the witness might be, talked to law enforcement, couldn't find any further information, asked family members, talked to family members, and ultimately couldn't find that witness. Here, we don't know when the investigator called, left cards. We don't know where. We don't know if it was an Illinois address. It doesn't even say her home. We don't know where. And we don't know how many times. We have none of those details. There's no affidavit by the investigator in this case. And it's just, you know, it's significantly lacking, and there were leads to follow up on that we just, we don't have that information. Yeah, and I, it's, you know, it's not Mr. Davis's burden to suggest what could have been done. But nevertheless, there's a lot, right, that could have been done here. They have, they have her phone number. You know, there's no indication that they did any sort of database searches to connect a location to that phone number. And then importantly, we, we don't know that an investigator talked to any of her family members. From that body worn camera video, we can see at the beginning that there's a lot of family members sitting around chatting. And I think at one point, they even say her grandpa lives upstairs. And there's no indication that they went back to that address, knocked on some doors to try to find grandpa, try to find anybody to see if there might be an address. Solson, can I ask a question? Yes. Argument number 10 of the motion, which he withdrew, says the state did not make diligent attempts to secure the attendance and testimony of the trial of Ms. Blalock. Why doesn't that make this whole issue go away? He withdrew that motion. And this argument you're making is argument number 10 of the motion he specifically withdrew in order to secure the benefit of the plea agreement. Because we argue that it should be reviewed still under plain error. But clearly, he had a merit. But he said the defendant can give up his right to pursue plain error as well, can't he? Are you, are you saying that if I say, I understand this is structural error, but I'm waiving it because I want to take advantage of this plea agreement. And I agree not to raise this issue. Are you saying that we can force him to accept that error and then address his case based on that? Sorry, can you explain what you mean by force him to address the error? Well, in my opinion, that's kind of what's happening here. He said the state did not make diligent attempts. That's exactly what your issue is here. He says, I want to withdraw that. And the court in its handwritten order makes a point of pointing out that the defendant himself, not just counsel, the defendant himself said he wants to withdraw that motion. How does that now put this in the realm of plain error at all? You mean, how does it? Yeah. Yeah, because like, you know what? No, no. Your, your, your pause gave me pause. Even if it is plain error, how does it make it a matter that we can address when, when the defendant says, I expressly give up my right to pursue this issue? I think when you look at the record and, and he, then defense counsel says, my client would like to appeal. That's, I think that's telling, right? Like that. Well, he wants to appeal his conviction. Yes. He wants to appeal the fact that he was found guilty. Yes. But he laid out for us a list of 17 issues that he is expressly withdrawing. Issue number 10 is the issue you're now arguing. Yes. Yeah. We argue that, you know, this was clearly a meritorious issue that defendant knew that he may be, it may be, but we're, we're, we're, we're past that point. Let's assume every issue was meritorious. He says, judge, I do not want to raise these issues. I'm telling you right now, I want this deal. And in order to secure this deal, I am willing to give up all of these issues. We can't, he can't do that. I don't know that defendant would say that he understood he was giving up every issue raised in that. I think he understood that. That's a different question. My question is from a legal standpoint, he can't do that because now you're talking about knowing involuntary. That would be a motion to withdraw, but you say we don't, we're not dealing with a motion to withdraw because it's not a 604 issue. So on this issue, can't he say, I'm giving up each one of these arguments. I think with withdrawing or with, yeah, withdrawing the motion for new trial, he gave up the right to have those preserved for an appeal. But I think that, you know, plain error can still apply if there's a, if there is plain error that's occurred. Yeah, I think, and I, again, as I said, I think, you know, there's no, there was no written agreement here. Mr. Davis did not sign on a line that said, there's no law that says he has to have a written agreement. There's no statute. There's no rule. Yes, but I think that it's best practice. And here's a perfect case for why prosecutors should have it in writing, but it's not required and it doesn't affect anybody's constitutional rights one way or the other as to whether such a agreement is in writing or not. I would just, I see my time's up, but I would just emphasize that the state had the chance, to say, hey, we mean that we want the entire appeal, you know, he's withdrawing his entire right to an appeal. Then they shouldn't have just said, let's withdraw the motion for a new trial. I think that the way it happened, you know, allowed for us to still argue this under plain error. So for those reasons, we argue that Mr. Davis's conviction is reversed and remanded for a new trial. Thank you. Thank you, Ms. Olson. Thank you. Mr. Londergan. Thank you, your honors. May it please the court and counsel, the only issue that I really want to address in oral argument is this issue of waiver versus forfeiture. I mean, you know, having to do with the plea agreement that was entered into it, or rather the sentencing agreement to be more clear. The state believes that entering into a sentencing agreement is in fact the same as a 604 plea agreement. And therefore prior to trying to exercise any appeal, the defendant is required to file a motion to withdraw the plea agreement. And this defendant was specifically admonished to that. The defendant even brings it himself on page 10 of his reply brief. The language is quite clear. If you wish to appeal the sentence, you must first file a motion seeking to withdraw your agreement to the sentence itself. That motion has to be in writing. You have to ask the court for permission to withdraw your plea agreement. Didn't do it. Mr. Londergan, that doesn't address any errors at trial though, right? The agreement was as to sentence. There wasn't a plea of guilty. And so that agreement wouldn't apply to errors at the trial, correct? No, I totally disagree, your honor. The whole importance of the agreement is he's withdrawing his motion for a new trial. As Justice DeArmond points out, he's got 17 issues raised in that motion, all having to do with errors at trial, nothing to do with sentencing. The state's not concerned with errors in sentencing. What we want out of the bargain in return for agreeing to give him a two-year sentence, we want this thing done. Our understanding is you withdraw your motion for a new trial, you forfeit or waive your right to appeal. Could you not have had an agreement to waive your right to appeal? Could that have not been part of the agreement and put on the record? Could the state not have had an agreement? Could there be an agreement for a defendant to waive their right to appeal? I mean, that plain and simple as part of an agreement. Could it have been expressed more clearly? Yes. Was it expressed sufficiently? Yes. Even the judge pointed it out specifically when he said, I still wish to appeal. The judge said, you don't have anything to appeal. So I think it's known what the bargain was. The defendant was admonished appropriately. The court instructed defense counsel as to what was going on here. You're withdrawing your motion for a new trial. You don't have any grounds on which to appeal. Counsel, if I may, it sounds like the position you're taking is that it was a full waiver, if you will, of the defendant's right to appeal. But then at the point that the trial court starts giving appeal rights, why does the prosecutor not object to that and say, judge, we just agreed there'd be no appeal? Well, he certainly could have. But best practice of every prosecutor is not to step on the judge. If the judge wants to admonish one way or the other, unless he's making blatant error, I think it's best to just let the judge do what he thinks is best. The judge was indicating some confusion because of this unusual circumstance, but nevertheless, he properly admonished the defendant as to what his rights were in order to perfect an appeal. Thank you. You're welcome. So I don't think there's a basis here to entertain this. You know, the whole purpose of getting the agreement to withdraw the motion for a new trial is to proclose any possibility of these issues being raised on appeal, which is exactly what the defendant is attempting to do in this instance. Now, as regard to this, I think, I'm only waiving my right to appeal preserved error as opposed to non-preserved error. You know, that's a distinction for the state's position, a distinction with no difference. The state is not negotiating to have you waive all the issues that we're aware of, only so that you, the defendant, can attempt to backdoor the agreement by raising issues of plain error or ineffective counsel. You know, the whole purpose of the agreement is to proclose appeal. And if you want to set that aside and you want your appeal, then you have to file the motion to set aside the sentencing agreement. That wasn't done. And so in this instance, it's either appeal, you know, interesting to know, Judge Vancell, is it a forfeiture or is it a waiver? You know, in my brief, I argued it was a forfeiture, but it may in fact be a waiver because it's an intentional knowing waiver of an issue as part of a police sentence agreement. So I may have misspoke in my use of that language in my brief. As to the merits of the claim, you know, these types of issues are sui generis. Each case is going to be unique. It does not serve to look at a string of cases and see what was done and what was not done in those previous cases and try to apply it to the case at hand. The Supreme Court has so said and addressed that very issue and said that's not the proper practice. We're supposed to look at these cases on a case-by-case basis and determine whether or not sufficient efforts were made to locate the witness. Here, the judge said that the efforts were slight, but so is the burden of proof. A preponderance, very slight, the lowest burden available. And the judge found that that burden had been met by the state. Perhaps more could have been done, but a sufficient amount was done to locate this witness. And defendant cannot point to any particular fact that would suggest had the state done something more, it would have resulted in locating or securing this witness for trial. The facts are that this witness didn't want to be served with subpoena or having to testify. And any effort by the state to locate her would have been futile. So, I think the judge properly heard the evidence, ruled on that evidence, found that the state had met its burden of proof, and properly allowed the forfeiture by bad conduct. If there's no further questions from the bench, thank you, Your Honors. Thank you. Ms. Olson, rebuttal? Just briefly, Your Honors, thank you. I do want to just follow up on counsel's point of the trial judge's confusion afterwards and the admonishment. I want to highlight some language because I think this is important. And this is what was read to defense counsel, to the defendant, and to the state. And the state could have objected at any point. The trial court said, you have a right to appeal the judgment of conviction for the sentence that's imposed. To appeal the conviction, you have the right to ask the clerk of this court to prepare and file a notice of appeal. The trial judge didn't say, he didn't combine those. He didn't say you have to withdraw your motion, your sentencing agreement to appeal. Can I ask a question, Ms. Olson? Yes, you may. It was pretty apparent from the transcript, the judge was kind of punting at that point because he really didn't know exactly how to address this under the circumstances. The argument's been made, well, the state could have said something. Well, just as reasonably, the state could have looked at the motion and thought, what the heck is this guy going to appeal? I don't need to say anything. Let him say he wants to appeal. That's fine because he's not going to go anywhere. He's raised the 17 issues. If he wants to raise maybe ineffective assistance or something like that, whether it gets addressed on a direct appeal or on a PC, that's really not the state's concern. Their concern is, does he really have any issues to raise here once he's withdrawn these 17 points? They don't have to say anything. They can very easily sit there and go, fine, go ahead and do your appeal. It isn't going to go anywhere because this is the deal you made and you've already waived all 17 of these issues. So if you can dream up something else, buddy, that's your deal. You're still going to get your two years and we're done. So the fact that the state's silent doesn't really necessarily mean what's being implied, that they somehow acquiesce in the idea that he's going to get to raise any one of these 17 issues. All they're doing is recognizing that, hey, anybody can ask to appeal. And as long as you can get your notice of appeal on file, you've got an appeal. Now, can you carry your burden once you do that? That's up to you. And that's not the state's concern. All they know is he doesn't have 17 issues to raise. He's going to have to come up with something else. So the fact that they don't say anything doesn't really mean much, in my opinion. Your Honor, respectfully, I disagree. I think that you say it seems clear that the judge was kind of punting, that he didn't know. I think it could be argued that it was clear after this exchange that, especially to Mr. Davis, that he had the right to appeal. That's the plain language of what he said, is you have the right to appeal your conviction. And for Mr. Davis— Nobody's saying he doesn't have the right to appeal. The issue is, what are his issues going to be on appeal? The state's not saying he can't appeal, and they wouldn't have to. And even if they said something, it wouldn't matter. If he can come up with a basis to appeal, well, whether he can come up with a basis or not, he can appeal. He's just got to be able to carry the water once he does. Correct. And as I said, we do argue that this is clearly under plain error because he did not forfeit or waive, whichever language you want to use. He did not waive the right for those issues. But counsel, he specifically withdrew that particular motion raising those particular issues. And I think that is the concern, is this was to be an agreement where we're looking at, to some extent, when we talk about whether it's the plea agreement or the sentencing agreement, contract principles. So in doing that, was he not giving up the right to appeal all of those items within that motion? I don't think so. I don't think that it matters what was in the motion for a new trial. He was withdrawing that. But when you look at what actually happened, you don't have to file a motion for a new trial for a lot of issues. I think that's, when you read the record, that's what's clear from it. And it doesn't, it's not automatically apparent to anyone that he forfeited those specific issues. And it's just, it's plainly not, you're referencing, I think, contract principles and like guilty pleas, but this is just not a guilty plea. And Mr. Davis never once admitted guilt to his conviction. And for those reasons, we do ask that the court reverse his conviction and remand for a new trial. Thank you. Thank you, counsel. The court will take the matter under advisement and the court stands in recess.